UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JULIA ANN POFF,
(BOP No. 30835-479),

        Petitioner,

v.                                    Civil Action No. 4:21-CV-900-P
                                         (Consolidated with
                                         No. 4:21-CV-1288-P )

MICHAEL CARR, Warden,
FMC-Fort Worth,

        Respondent.

**OPINION & ORDER**

    Before the Court is the consolidated petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by petitioner, Julia Ann Poff, a federal prisoner who is confined at FMC-Carswell. Am. Pet.1-12, ECF No. 1. After considering the consolidated § 2241 petition and all relief sought by Poff, the Court concludes that her consolidated § 2241petition should be dismissed, in part, and otherwise denied.

**I.    BACKGROUND**

    **A.    Facts Related to Conviction and Detention**

    On July 1, 2019, Poff pleaded guilty to 18 U.S.C. §§ 2 and 844(d), Transportation of Explosives with the Intent to Kill, Injure, and Intimidate, for mailing explosive devices to Texas Governor Gregg Abbott, President Barack Obama, and the Commissioner of the Social Security Administration (SSA), Carolyn Colvin, on or about October 2016. Judgment, App. 5, ECF No. 12. On November 18, 2019, Poff was sentenced to a 120-month term of imprisonment. *Id.* at 6.

    Poff was held in pre-sentence detention at the Federal Detention Center Houston (FDC- Houston) from November 9, 2017 to November 18, 2019, the date she was sentenced. App. (Declaration of BOP Attorney Heather Rea) 2-3, ¶¶ 3-4, ECF No. 12. She received credit for the 739 days she was held in pre-sentence detention. *Id.* at 3, ¶ 5. The expiration of the full term of her sentence is November 9, 2027, and her projected good conduct time release date is May 18, 2026. *Id*. Poff was transferred to FMC-Carswell in Fort Worth, Texas on February 10, 2020, and

she remains incarcerated at FMC-Carswell. *Id.*, ¶ 4.

While incarcerated at FDC-Houston, Poff completed 18 Bureau of Prisons (BOP) education courses. Suppl. App. 55, ECF No. 23. Five of those courses were identified by the BOP as Evidence-Based Recidivism Reduction (EBRR) programs and productive activities. *Id*. Those courses included the following: (1) "Threshold Program" completed 09/06/2018; (2) "Houses of Healing: A Prisoner's Guide to Inner Power and Freedom" completed 04/25/2019; (3) "Circle of Strength" completed 06/19/2019; (4) "Women in the 21st Century Workplace" completed 09/30/2019; and (5) "Alcoholics Anonymous" completed 10/29/2019. Poff has not participated in any BOP authorized EBRR programming or productive activities since being sentenced on November 18, 2019. Suppl. App. 55, ECF No. 23; *see generally*, Suppl. App. 59-108, ECF No. 23. At the filing of the Respondent's supplemental response, Poff was pending enrollment in the Life Connections Program (LCP). App. 23-24, ECF No. 12; Suppl. App. 79, ECF No. 23. She attended LCP orientation on August 20, 2021. App. 24, ECF No. 12.

**B. Facts Related to Exhaustion of Administrative Remedies**

Poff submitted various Requests for Administrative Remedies seeking time credit under the First Step Act ("FSA"), and challenging the classification of her offense as a "crime of violence," in order to meet the qualifications for home confinement under the CARES Act. App. (Grievance Records) 25-38, ECF No. 12. On October 30, 2020, Poff submitted a Request for Administrative Remedy, No. 1054759-F1, asking for earned time credits under the FSA because she did "outside courses," "received certificates," and was "about [to do] a Bachelor's degree program."[1] *Id.* at 29. Warden Carr informed Poff that the BOP was then reviewing legislation and would carry out necessary steps to comply with earned time credits under the FSA. *Id.* at 30. Poff appealed that response to the Regional Director, No. 1054759-R1, on January 13, 2021. *Id.* at 31. Regional Director J. Baltazar, responded on March 25, 2021, and informed Poff that the BOP had not begun calculating or applying time credit under the FSA. *Id.* at 32. She then appealed to the BOP's Central

---

1. Also, on October 30, 2020, Poff submitted a Request for Administrative Remedy, No. 1054758-F1, seeking clarification as to why she was determined to be "FSA Ineligible." App. 26, ECF No. 12. Poff voluntarily withdrew No. 1054758-F1 on December 7, 2020. *Id.* at 27.

2

Office, No. 1054759-A1, on April 13, 2021. *Id.* at 33. The Administrator for the National Inmate Appeals responded and concurred with Warden Carr and Regional Director Baltazar. *Id*. at 34. Specifically, Petitioner was informed that "[s]taff are putting forth a diligent effort to review all inmates in accordance with the FSA implementation" and "continue to evaluate and approve programming for credit." *Id*. Poff was encouraged to work with her Unit Team regarding future questions related to her eligibility. *Id.*

On May 4, 2021, Poff complained that her 18 U.S.C. § 844(d) offense was misclassified as "violent," which is preventing her "from being eligible under the CARES Act," though she did not specifically identify what she was ineligible for. *Id*. at 36. Poff made an informal resolution attempt, requesting the mistake be corrected and remove "violence" from her offense. *Id.* The response informed Poff that her offense is classified as "violent." *Id.* She then submitted a separate Request for Administrative Remedy, No. 1082661-F1, asserting, "[i]n light of *US v. Davis*, my crime that I was forced to plead guilty does not meet the definition of a violent crime."[2] *Id*. at 37. She again asked for her crime be reclassified as non-violent so she can "meet the qualifications of the CARES Act and can be released on home confinement." *Id.* Warden Carr denied the Request for Administrative Remedy, No. 1082661-F1, on June 23, 2021, stating, "your specific offense is listed on PS P5162.05,[3] which indicates that your offense will be deemed as a crime of violence."[4] *Id.* at 38. Poff was informed that if she was dissatisfied with Warden Carr's response, she could appeal to the Regional Director. *Id*. Poff did not appeal Grievance No. 1082661-F1.

---

[2] In *United States v. Davis*, the Supreme Court examined the phrase "crime of violence," finding the residual clause 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. 139 S. Ct. 2319 (2019).

[3] Program Statement ("PS") P5162.05 is the BOP's Program Statement regarding Categorization of Offenses. App. 58-74, ECF No. 12. The purpose of PS P5162.05 is to assist the BOP in implementing its various policies and programs. *Id*. at 59. An inmate may be denied the benefits of certain programs if the inmate's offense is identified by the Director of the BOP as a "crime of violence." *Id.*

[4] PS P5162.05 classifies 18 U.S.C. § 844, including all subsections, as a "crime of violence" for all program benefit considerations. App. 60-61, ECF No. 12.

## II.     GROUNDS FOR RELIEF

Poff initially sought relief in case number 4:21-CV-900-P. In the initial amended petition, Poff: (1) challenged the BOP's classification of her criminal offense under 18 U.S.C. § 844(d) as a "crime of violence;" (2) asserted that removal of the "crime of violence" classification would permit her to earn time credits under the FSA; (3) claimed she was entitled to "immediate release" under the FSA and Coronavirus Aid, Relief, and Economic Security Act (CARES Act); (4) alleged the BOP discriminated against her under the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act of 1973 ("RA") on the basis of disability by preventing her from enrolling in the Life Connections Program, which prevented her from earning time credits; and (5) claimed an unidentified judge discriminated against her by denying her enrollment in a bachelor's degree program that also would earn her FSA time credits. Am. Pet. 5-7, ECF No. 5. The Respondent filed a response with an extensive appendix. ECF Nos. 11 and 12.

While those pleadings were pending in case number 4:21-CV-900-P, Poff filed another separate § 2241 proceeding in case number 4:21-CV-1288-P. In that § 2241 petition, Poff challenged provisions of the Bureau of Prison's (BOP) proposed rule implementing FSA time credits to federal inmates for participating in EBRR programs and productive activities, and asserted entitlement to 420 days of time credits. Suppl. Pet. 5-7 (No. 4:21-CV-1288-P), ECF No. 5. Since the second petition, referred to herein as a "supplemental petition," raised one or more of the same claims in Poff's first petition, the Court consolidated the cases. ECF No. 17. In response to the Court's order, the Respondent filed a supplemental response and a supplemental appendix. ECF Nos. 22 and 23.

On January 13, 2022, the U.S. Department of Justice announced and issued for publication the final rule codifying the BOP's procedures regarding earning and the application of FSA time credits. *See* Justice Dep't Announces New Rule Implementing Federal Time Credits Program Est. by the First Step Act, U.S. DOJ, https//www.justice.gov/opa/pr/justice-department-announces-new-rule-implmenting-federal-time-credits-program-established (last visited, June 13, 2022). The supplemental response took this final rule into account. Suppl. Resp. 1-10, ECF No. 22.

4

III.     ANALYSIS

A.     Lack of Exhaustion as to the Bulk of Poff's Claims

Although 28 U.S.C § 2241 does not expressly contain an exhaustion requirement, it is well-settled law that a federal inmate must exhaust all administrative remedies available before filing a habeas petition under § 2241. *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012) ("[A] federal prisoner filing a § 2241 petition must first pursue all available administrative remedies") (citing *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993)). An inmate's failure to properly and fully pursue administrative remedies consistent with the procedures provided by the prison system in which he is incarcerated constitutes procedural default, warranting dismissal of a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. *Carmona v. Bureau of Prisons*, 243 F.3d 629, 632-34 (2d Cir. 2001). If the available administrative remedies are either unavailable or wholly inappropriate, or if the exhaustion would be futile, a petitioner need not exhaust. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). Such exceptions to the exhaustion requirement apply only in extraordinary circumstances, and Petitioner bears the burden of demonstrating the inappropriateness or futility of administrative review. *Id.*

Exhaustion of administrative remedies for a BOP inmate requires the inmate follow the procedures for filing administrative remedies outlined in 28 C.F.R §§ 542.10-542.18. This process requires that an inmate first make an informal request for resolution to the appropriate BOP staff member. 28 C.F.R. § 542.13. If an informal resolution is not achieved, an inmate must submit a Request for Administrative Remedy to the Warden. 28 C.F.R. §542.14. If the inmate is not satisfied with the Warden's response, she may appeal to the Regional Director within twenty days unless an extension is granted. 28 C.F.R. § 542.15. If the inmate is dissatisfied with the Regional Director's response, the inmate may appeal to the Office of General Counsel, or Central Office, within thirty days, although the time limit may be extended if the inmate demonstrates a valid reason for the delay. 28 C.F.R. § 542.15. The Appeal to the General Counsel is the final administrative appeal. 28 C.F.R. § 542.15.

Poff exhausted her administrative remedies regarding any claims seeking purportedly earned time credits. App. 28-34, ECF No. 12. Poff, however, failed to exhaust her administrative remedies regarding her alleged eligibility for "immediate

5

release." In this regard, Poff submitted a Request for Administrative Remedy, No. 1082661-F1, at the facility level, asking her offense be reclassified so she could be eligible for home confinement. *Id.* at 36-37. But Poff never appealed the Warden's response to the next level, the Regional Director. *Id.* at 38. Poff also failed to submit any Request for Administrative Remedy regarding the purported discrimination by the BOP or the unidentified judge. Because Petitioner failed to exhaust her claims regarding eligibility for "immediate release" and discrimination, all of her claims in this consolidated action other than for time credits under the FSA, must be dismissed for lack of exhaustion.[5] The Court will consider Poff's claims for time credits under the FSA in detail *infra* section C.

### B. Alternative Dismissal of Claims for Immediate Release, for Home Confinement, for Relief under the ADA and Section 504 of the Rehabilitation Act, and for Relief on the Basis of Discrimination by an Unidentified Judge

As noted above, the bulk of Poff's claims must be dismissed for lack of exhaustion. Alternatively, the Respondent set forth in great detail in its response, the reasons why Poff is not entitled to relief under § 2241 with regard to all of her claims unrelated to seeking time credits under the FSA. Therefore, for the reasons stated in the Respondent's response at sections 3 through 7, pages 14-22 (ECF No. 11), this Court lacks jurisdiction over Poff's claims to be entitled to immediate release, home confinement, relief under the ADA or the RA, and any alleged claim of discrimination against an unnamed judge, such that all of these unexhausted claims are otherwise dismissed for lack of jurisdiction.

---

5. Poff contends that her claims in the petition are exempt from exhaustion because "most of the petition deals with statutory construction." ECF No. 5, p. 2. Some courts have applied an exemption for narrow disputes of statutory construction. *See, e.g., Goodman v. Ortiz*, 2020 WL 5015613 (D. N.J. Aug. 25, 2020) (citing *Coleman v. U.S. Parole Comm'n*, 644 F. App'x 159, 162 (3d Cir. 2016)). In *Ross v. Blake*, however, the Supreme Court held that a court may not excuse an inmate's failure to exhaust available administrative remedies. *Ross v. Blake*, 578 U.S. 632, 639-40 (2016). The Supreme Court identified three circumstances in which administrative remedies are unavailable: (1) when an administrative procedure operates as a dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) when an administrative scheme is so opaque that it becomes incapable of use (no ordinary prisoner can discern or navigate it); and (3) when prison administrators thwart inmates from using the grievance process through machination, misrepresentation, or intimidation. *Id.* at 643-45. These circumstances are not present here.

### C. Remaining Claim for Time Credits under the FSA

Although Poff effectively completed exhaustion of administrative remedies with regard to her claims to be entitled to sentence credit under the new time earning provisions resulting from the passage of the FSA, she is ultimately not entitled to the relief sought, as explained herein.

#### (1) Final Rule Implementing BOP's FSA Time Credit Procedure

On November 25, 2020, the BOP published for public comment a proposed rule codifying its then applicable procedures regarding the application of FSA time credits. 85 F. Reg. 75268, 75272 (Nov. 25, 2020). That 2020 proposed rule set forth, in part, the following provisions:

- FSA time credits may only be earned by an eligible inmate for completion of a BOP authorized EBRR program or productive activity that is assigned to that particular inmate based on the inmate's risk and needs assessment, and which the inmate successfully completes on or after January 15, 2020.[6] 85 F. Reg. at 75269, 75272.

- To earn time credits, the inmate must "successfully complete" each EBRR program or productive activity assigned to the inmate based on the inmate's risk and needs assessment. *Id.*

- "Day" is defined as "one eight-hour-period of a successfully completed [EBRR] program or productive activity." *Id*.

Poff's amended petition challenges these provisions. On January 13, 2022, however, after consideration of public comments, the Department of Justice announced the BOP's *final rule*.[7] Suppl. App. 2-53; ECF No. 23. That final rule amended the proposed provisions proffered in 2020 above, as follows:

- An eligible inmate may earn FSA time credits for successfully

---

[6]. Under the FSA's "phase-in" approach, the BOP's deadline to complete the risk and needs assessment for each inmate was January 15, 2020. Suppl. App. 9, ECF No. 23. Because the FSA is silent regarding a specific date when eligible inmates must begin earning time credits, the BOP previously exercised its discretion to allow inmates to earn time credits only after the risk and needs assessments were completed, which was January 15, 2020. *Id.*

[7]. *See supra* page 4.

7

participating in an EBRR program or productive activity from December 21, 2018, the date the FSA was enacted, until January 14,2020. *Id.*, at 11, 49-50 (to be codified at 28 U.S.C. § 523.42(b)(2)).[8]

• An eligible inmate may earn FSA time credits for successfully participating in an EBRR program or productive activity recommended by the BOP based on the inmate's individualized risk and needs assessment on or after January 15, 2020. *Id.* (to be codified at 28 U.S.C. § 523.42(b)(3)).

• An inmate must be "successfully participating" in an EBRR program or productive activity to earn FSA time credits. *Id.*, at 6, 47 (to be codified at 28 U.S.C. § 523.41(c)).

• "Day" is no longer defined as an 8-hour period. *Id.*, at 6, 49. For every thirty-day period that an eligible inmate successfully participates in EBRR programming or productive activities recommended based on the inmate's risk and needs assessment, the inmate will earn 10 days of FSA time credits. *Id.* at 49 (to be codified at 28 U.S.C. § 523.42(c)). Minimum or low risk inmates will earn an additional 5 days of FSA time credits per the thirty-day period. *Id.*

> (2). <u>Final Rule awards FSA time credit to eligible inmates that successfully participate in EBRR programming as of December 21, 2018, the date of enactment</u>.

Poff contends the BOP took the position that the FSA was enacted on January 15, 2020. Suppl. Pet. 5, (No. 4:21-CV-1288-P), ECF No. 5. The BOP had previously taken the position that FSA time credits could only be earned for assigned EBRR programs or productive activities completed on or after January 15, 2020. ECF No. 11, p. 12, n. 7; 85 F. Reg. 75268, 75272 (Nov. 25, 2020). The BOP had made the

---

[8]. Since the FSA's phase-in approach provided the BOP until January 15, 2020 to put in place the system to assign and track participation in EBRR programming and productive activities, the BOP noted it was not feasible prior to January 15, 2020 to connect an individual inmate's participation in programming to an individual risk and needs assessment. *Id.,* p. 10. Therefore, the BOP is affording eligible inmates a presumption of participation from December 21, 2018 to January 14, 2020 and will be award FSA time credits accordingly. *Id.*, p. 11.

8

following analysis. Although the FSA was enacted on December 21, 2018, it also provided the BOP with 210 days from enactment to develop and release a risk and needs assessment system to, in part, determine and assign appropriate EBRR programming. 18 U.S.C. § 3632(a) (completed on July 19, 2019). The BOP took the position it had an additional 180 days—until January 15, 2020—to implement and complete the initial intake risk and needs assessment for each inmate. 18 U.S.C. § 3621(h)(1).

Since the FSA contemplated this phase-in period, and because the FSA is silent regarding a specific date when eligible inmates may begin earning FSA time credits, the BOP previously exercised its discretion and adopted the position that it would begin allowing inmates to earn FSA time credits after the risk and needs assessment and relevant programming was established. Suppl. App. 9, ECF No. 23. In light of the comments to the proposed rule, however, the BOP acknowledged in the final rule that the FSA could be interpreted to allow eligible inmates to earn FSA time credits as of December 21, 2018. *Id.,* at 9-10 (collecting cases to demonstrate mixed case law). As a result, the BOP amended the final rule to permit eligible inmates to receive retroactive FSA time credits for EBRR programming and productive activities participated in starting on December 21, 2018. *Id.*, at 10-11. Therefore, Poff's challenge to the BOP's former position that FSA credit could only apply to time credits earned after January 15, 2020, is now moot.

> (3) <u>Poff may only receive FSA time credits for BOP approved EBRR programming and productive activities assigned to her based on her individual criminogenic needs.</u>

Poff claims 18 U.S.C. § 3632(d)(4) does not require that an EBRR program or productive activity: (1) be approved by the BOP, or (2) that the inmate actually have a "need" for the program or activity. Suppl. Pet. 5-6 (No. 4:21-cv-01288-P), ECF No. 5. She avers that she should receive FSA time credits for programs or activities she participated in—such as correspondence courses—that are not designated by the BOP as EBRR programming and productive activities. *Id*. The FSA's statutory language, however, requires that EBRR programming and productive activities be connected to the individual inmate's identified "needs," which advances the FSA's goal of reducing the inmate's risk of recidivism.

9

In this regard, the FSA required the Attorney General to develop and release a risk and needs assessment system to, among other things: (1) determine and classify the recidivism risk of each inmate, and (2) "determine the type and amount of [EBRR] programming that is appropriate for *each* prisoner and assign *each* prisoner to such programming accordingly, *and based on the prisoner's specific criminogenic needs*." 18 U.S.C. § 3632(a)(1), (3) (emphasis added); *see* 18 U.S.C. § 3632(b); *see also* 18 U.S.C. § 3621(h)(6) ("The Director of the [BOP] shall provide all prisoners with the opportunity to actively participate in [EBRR] programs and productive activities, according to their specific criminogenic needs, though their entire term of incarceration."). Once the needs and assessment system was developed, the FSA directed the BOP to "implement and complete the initial intake risk and needs assessment for *each* prisoner…and begin to assign prisoners to appropriate [EBRR] programs *based on that determination*." 18 U.S.C. § 3621(h)(1)(A) (emphasis added). Incentives, such as time credits, could then be awarded for successful participation in those assigned EBRR programs and productive activities. 18 U.S.C. § 3632(d)(4). Indeed, the FSA unambiguously requires the creation of a risk and needs assessment system to ensure EBRR programming addresses an inmate's needs to reduce that inmate's risk of recidivism. Poff's claim otherwise is inconsistent with the purpose and language of the FSA.

Poff also claims that the EBRR program or activity does not need to be approved by the BOP. Suppl. Pet. 5-6 (No.4:21-CV-1288-P), ECF No. 5. But the FSA delegates to the BOP the authority to "expand the effective [EBRR] programs and productive activities it offers and add new [EBRR] programs and productive activities necessary to effectively implement [the risk and needs assessment system]." 18 U.S.C. §§ 3621(h)(1)(B). The BOP must ensure that a prospective EBRR program or productive activity meets the FSA's definition, which includes: (1) evidence that the program or activity reduces recidivism or is based on research indicating it is likely to be effective in reducing recidivism, and (2) "is designed to help prisoners succeed in their communities upon release from prison." 18 U.S.C. §§ 3635(3)(A) and (B). Consequently, the BOP must evaluate each EBRR program and productive activity to ensure it meets FSA requirements.[9] Thus, the FSA requires the BOP to

---

9. The final rule noted that commentators suggested that the list of EBRR programs and productive activities should be expanded to include participation in online or

10

approve each program or activity and designate it as an EBRR program or productive activity.

In sum, any program or activity that Poff seeks FSA time credits for must be approved by the BOP and be assigned to her based on her specific criminogenic needs.[10]  To the extent Poff seeks time credits for programs or activities not designated as EBRR programming or productive activities, such claim must be dismissed.

### (4) Poff's challenge to the BOP's proposed definition of a "day" under the FSA is moot.

As noted above, the BOP's initial proposed rule defined "day" as a one 8-hour period. 85 F. Reg. at 75269, 75272. After reviewing comments, however, the BOP agreed the proposed definition would be logistically burdensome to calculate and administer. Suppl. App. 5, ECF No. 23.  Therefore, the final rule provides that "for every thirty-day period that an eligible inmate has successfully participated in EBRR programs or productive activities recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA time credits." *Id.*, at 6, 49 (to be codified at 28 C.F.R. § 523.42(c)(1)). And an inmate will earn an additional five days for every thirty-day period if the inmate is determined to be at a minimum or low risk for recidivism. *Id.* (to be codified at 28 C.F.R. § 523.42(c)(2)). Thus, Poff's challenge to the "8-hour" rule is now moot.

---

correspondence courses (including college courses) and a variety of other courses, programs and activities. Suppl. App. 16-17, ECF No. 23.  The BOP has partnered with various external organizations to assist with inmate reentry and educational programs, and ensure the EBRR programs and productive activities provided are in accordance with the FSA's statutory requirements. *Id.*, at 18. With respect to online and correspondence college courses, the BOP includes post-secondary education provided by credentialed instructors and contractors, as authorized by the BOP's education staff. *Id*., at 20.

[10]. For example, the Life Connections Program addresses family and parenting "needs," to strengthen an inmate's understanding of what it means to live effectively in the community to help reduce an inmate's risk of recidivism. Suppl. App. 79, ECF No. 23. To the extent Petitioner could seek FSA credit for EBRR programs or productive activities between December 21, 2018 and January 14, 2020, she now enjoys the presumption of participation in an EBRR program or productive activity. *See, supra*, n. 6.

> (5) <u>Poff has not earned FSA time credits because she has not participated in EBRR programming or productive activities after her sentence commenced.</u>

The FSA unequivocally states an inmate may not earn FSA time credits for EBRR programs that the inmate successfully completed: "(i) prior to the date of enactment of this subchapter [here, December 21, 2018]; or (ii) during official detention prior to the date that the prisoner's sentence commences under [18 U.S.C. §] 3585(a)." 18 U.S.C. §§ 3632(d)(4)(B)(i) or (ii).[11] Poff's sentence commenced on November 18, 2019. Judgment, App. 5, ECF No. 12; see also App. (Rhea Declaration) at 3, ¶ 4. Therefore, Poff cannot receive any FSA time credits for any programming or activities she participated in prior to December 21, 2018 or prior to November 18, 2019.

Poff, however, makes the conclusory allegation in her supplemental petition that she is entitled to 420 days of FSA time credits. Supp. Pet. 7 (No. 4:21-CV-1288-P), ECF No. 5. It is unclear how Poff calculated the time credits, and she failed to submit any documentation to support this calculation. Instead, the evidence provided by the Respondent reveals that Poff has not participated in any EBRR programming or productive activities after November 18, 2019, the date her sentence commenced. *See* Suppl. App. 55 (Poff's "Individualized Needs Plan - Program Review" showing that the last designated EBRR program she participated in was completed on October 29, 2019). Therefore, review of BOP records confirms that Poff did not earn any FSA time credits for courses completed prior to December 21, 2018 (i.e., the "Threshold Program"), or any of the courses she completed while in pre-sentence detention. *Id.* Even to the extent Poff could claim she participated in correspondence courses, she submits no evidence of these courses or that they are BOP approved EBRR programming for her individualized needs.

In sum, there is no evidence to support that Poff is entitled to 420 days of FSA time credits and Poff's claim for such relief must be denied.

---

11. A sentence to a term of imprisonment "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of a sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

## IV. CONCLUSION

It is therefore **ORDERED** that petitioner Julia Ann Poff's consolidated petition for writ of habeas corpus under 28 U.S.C. § 2241 is **DISMISSED**, in part, and **DENIED**.[12]

**SO ORDERED** this **14th day** of **June, 2022.**

_/s/ Mark T. Pittman_
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

12. The clerk of Court shall provide notice of this order and accompanying judgment to the Fifth Circuit in their pending case number 22-10096.

13